UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW MERZ,

Plaintiff,

v.

CITY OF KALAMA, et al.,

Defendants.

CASE NO. C24-5588 BHS

ORDER

THIS MATTER is before the Court on defendants' second motion for judgment on the pleadings, Dkt. 45, and on defendants' motion to strike pro se plaintiff Matthew Merz's "second notice of subsequent events," Dkt. 64.

## I.    BACKGROUND

Merz is a former Kalama city council member. His Amended Complaint, Dkt. 27, alleges that seven defendants—the City of Kalama; its mayor, George Reuter; council member Jon Stanfil; the Kalama Police Department; Police Chief Rafael Herrera; the Kalama Library; and library board member Harlyn Jenkins—conspired to punish Merz for his protected speech and political advocacy. *Id*. at 2–4.

ORDER - 1

The Court granted defendants' first motion to dismiss because Merz failed to respond to it, asking for leave to amend[1] instead. It permitted him to amend. Dkt. 24. As defendants point out, his amended pleading is shorter (60 pages rather than 103), but its core allegations[2] are the same. Merz continues to allege a broad conspiracy:

Defendants

(a) conducted an unauthorized "character background investigation" on Plaintiff in **violation of City library policy**, falsely branding him as racist, sexist, homophobic, transphobic, and even a child predator, and disseminated these defamatory labels to City officials, City staff, and the public;

(b) weaponized sensitive police information by releasing to City officials digitally manipulated, sexually degrading images from a confidential investigation file pertaining to Plaintiff in order to humiliate and discredit him;

(c) suppressed and ignored credible threats against Plaintiff's life from a third party, going so far as to delete a death-threat email from Plaintiff's City account and mute Plaintiff's microphone during a council meeting to prevent him from speaking about the danger he faced; and

(d) abused legal processes by accessing Plaintiff's Protected Health Information ("PHI") without lawful authority in order to pursue a baseless Extreme Risk Protection Order ("ERPO") against Plaintiff following the onset of this very lawsuit currently before the Court with the punitive intent to further harass, intimidate, and defame him, an action that was swiftly leaked to local media to publicly smear Plaintiff. Each of these acts was

---

[1] A properly filed amended complaint generally moots a pending motion to dismiss. *See Frazier v. City of Fresno*, 2023 WL 1786228, at *1 (E.D. Cal Feb 6, 2023) ("Once an amended complaint is filed, the previous complaint becomes null and void, and generally any pending motion to dismiss that was directed at the previous pleading will be thus rendered moot.").

An "emergency motion for leave to amend," unaccompanied by a proposed amended complaint, does not have the same effect. *See* Dkt. 22.

[2] Merz's claims based on the ERPO are new. The rest of Merz's claims are revised, but they are not materially different than the claims the Court already dismissed.

ORDER - 2

> carried out under official authority, without due process and reckless disregard for Plaintiff's substantive due process rights under the First and Fourteenth Amendment, and often in direct **contravention of City policy** and state law.

*Id*. at 4–5 (emphasis added). Merz alleges defendants did these things in retaliation for his reporting on government misconduct, challenging the status quo, "embarrassing" Reuter on social media, and running for Mayor against Reuter. *Id*.

His amended complaint is lengthy, but it is filled with conclusions, adjectives, characterization and speculation. It is not written in chronological order, and while some dates are specific, the order of events is often unclear. Merz frequently alleges that something "likely" happened, and replaces the actual language of which he complains with conclusory characterizations like "labeled" "branded" and "smeared." Defendants reasonably attempt to divide the factual allegations into five[3] categories, but the Court views them as three narratives.

First, in early 2021, Councilman Merz sought to donate a comic book collection to the Kalama Public Library. In July 2021 the proffered donation was discussed at the library board meeting, which Merz attended (on Zoom). Merz alleges that he was made to feel unwelcome at this meeting, and that "Jenkins stated that Plaintiff was not an

---

[3] Defendants' list is:

(1) "Indecent Images;"
(2) "Background Checks/The Comic Book Controversy;"
(3) "Christopher Jensen's Threats;"
(4) "Being Silenced at the City Council;" and
(5) "Protected Health Information (PHI) and the ERPO."

Dkt. 45 at 2. Merz's "indecent images" narrative implicates only a non-party, Attorney Satterfield. Dkt. 27 at 49–50.

ORDER - 3

appropriate person to be volunteering with children or selecting comic books for children." Dkt. 27 at 11. He alleges Jenkins performed a "background check" on Merz, seeking to find a reason to reject the comic book donation. *Id*. at 10.

Second, in 2021, Merz was apparently the focus of a stalker named Christopher Jensen. Dkt. 27 at 13. He does not articulate why Jensen targeted him, but he does allege that Jensen threatened to murder him in an email sent to Merz's Kalama email account, though he alleges he never saw the email. *Id*. Nevertheless he alleges that the email "contained a manifesto that purported to expose plaintiff." *Id*. He alleges that "someone" deleted the email instead of forwarding it to law enforcement. *Id*. He alleges that he sought to discuss Jensen and his threats at various city council meetings, and Reuter muted his microphone. *Id*. at 16.

Third, shortly after Merz filed this case, his therapist contacted Kalama police, warning them about something—Merz does not say what—that Merz had said in therapy. Herrera then sought and obtained an Extreme Risk Protective Order (ERPO) in state court.

These allegations are discussed in more detail where and if required in connection with the Court's discussion of the ten claims Merz asserts based on them:

(1)    First Amendment Retaliation (42 U.S.C. § 1983);

(2)    Fourteenth Amendment Due Process (§1983);

(3)    Fourth and Fourteenth Amendment unlawful seizure and medical privacy (§1983);

(4)    Washington Privacy Act (RCW 70.02);

ORDER - 4

(5)      Equal Protection (§1983);

*(5)*[4]    Washington Law Against Discrimination (WLAD) (RCW 49.60);

(6)      Defamation (Libel and Slander) (RCW 9.58.010);

(7)      Negligence – Failure to Warn;

(8)      Civil Conspiracy (42 U.S.C. § 1985(2)); and,

(9)      Outrage.

Dkt. 27.

## II.   HOUSEKEEPING

As an initial matter, the Court previously rejected Defendants' objections about the length and timing of Merz's Response, and denied Merz's motion to strike. Dkt. 60. It left open the issue of Merz citing to fabricated, inaccurate authority: "In *Sorensen v. City of Bellingham*, 15 Wn. App. 2d 730, 733, 478 P.3d 1110 (2020), the court held that when officers affirmatively act in a way that leaves a person worse off, a duty can arise even absent explicit assurances." Dkt. 48 at 23.

Merz corrected and explained the source of the inaccurate cite at Dkt. 52. He intended to cite *Norg v. City of Seattle*, 200 Wn.2d 749 (2023) for the same proposition. *Norg* did not involve analogous facts, and it is tenuous support for Merz's claim that any defendant is liable to him for failing to warn him of a known danger, particularly where

---

[4] The Amended Complaint's "Count 5" combines Merz's federal Equal Protection and state law WLAD claims. Dkt. 27 at 39. Because these are separate claims with separate elements and defenses, they are addressed separately.

ORDER - 5

no harm resulted. Nevertheless, because the Court can resolve the motion on the merits, it declines to dismiss based on the inaccurate citation.

Next, the defendants correctly point out that neither the Kalama Police Department nor its Library are separate entities subject to suit; they are simply part of defendant City of Kalama. Dkt. 45 at 18–19 (citing *Nolan v. Snohomish County,* 59 Wn. App. 876, 833, 802 P.2d 792, 796 (1990); *Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008); and *City of Seattle v. Dutton*, 147 Wn. 224, 226, 265 P. 729, 730 (1928). Merz does not disagree.

Merz's claims against these two named defendants are **DISMISSED** with prejudice. His *Monell* and other claims against Kalama itself are discussed below.

Finally, Merz's "notice of subsequent conduct," Dkt. 62, purports to inform the Court about the circumstances of Police Chief Herrera's retirement, after and unrelated to the events described in his amended complaint. *See also* Declaration at Dkt. 63. Merz contends that the information has bearing on the factual context and credibility issues implicated in the motion to dismiss. Dkt. 65.

As the Defendants correctly contend, this is not so. Their pending motion tests the plausibility of the allegations in Merz's amended complaint, not his evidence, and not their credibility. Merz's "Notice" is procedurally improper and the salacious information in it is wholly irrelevant. Defendants' Rule 12(f) motion to strike, Dkt. 64, is **GRANTED**, and Dkts. 62 and 63 are **STRICKEN**.

The remaining issues are addressed in turn.

# III.   DISCUSSION

## A.   Legal Standards.

### 1.   Rule 12(c) Standard.

Defendants argue that despite two lengthy efforts, Merz has failed to state a plausible claim against any of them.

Federal Rule of Civil Procedure 12(c) "is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows *the court to draw the reasonable inference* that the defendant is liable for the misconduct alleged." *Id*. (emphasis added).

Although courts must accept as true the complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When granting a Rule 12(b)(6) motion to dismiss, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). Courts may also deny leave to amend when the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

### 2.    Qualified Immunity

The four individual defendants assert they are qualifiedly immune from Merz's § 1983 constitutional claims against them. Dkt. 45 at 15–18.

The qualified immunity doctrine shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at

issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).

Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The reasonableness inquiry is objective, evaluating whether an official's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Even if an official's decision is constitutionally deficient, qualified immunity shields her from suit if her misapprehension about the law applicable to the circumstances was reasonable. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). As a privilege from suit, not merely from liability, qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citing *Malley v. Briggs*, 475 U.S. 335 (1986)).

For a constitutional right to be clearly established, a Court must define the right at issue with specificity, and not at a high level of generality. *Gordon v. County of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (citing *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019)). The Court's goal is to "define the contours of the right allegedly violated in a way that expresses what is really being litigated." *Id.* at 969 (citation omitted). Qualified immunity is not meant to be analyzed in terms of a "general constitutional guarantee," but rather the application of constitutional principles "in a particular context." *Id*.

(internal citations omitted). Ultimately, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court— or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Id*. (citing *District of Columbia v. Wesby*, 538 U.S. 48, 63 (2019)).

The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct. *Id*.; *see also Romero v. Kitsap County*, 931 F.2d 624 (9th Cir. 1991). However, because resolving whether the asserted federal right was clearly established presents a pure question of law, the Court draws on its "full knowledge" of relevant precedent rather than restricting its review to cases identified by the plaintiff. *Gordon*, 6 F.4th at 969 (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

### 3.    *Monell* Liability.

To plausibly plead a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991).

Under *Monell*, a plaintiff must allege: (1) that a municipal employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) that those customs or policies were the "moving force" behind the constitutional right violation. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397,

403–04 (1997). A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

**B.    Merz's Federal Claims.**

**1.    §1983 First Amendment Retaliation Claim.**

To assert a plausible First Amendment retaliation claim, Merz must plead facts allowing the Court to draw the reasonable inference that (1) he engaged in a constitutionally-protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Blair v. Bethel School Dist.*, 608 F.3d 540, 543 (9th Cir. 2020).

Merz alleges and argues that his criticism of Kalama and its governance on social media and elsewhere, and his discussing at the Kalama City Council meeting non-party Christopher Jensen's threats to Merz, was protected First Amendment activity. He asserts defendants retaliated against him for that activity by muting his microphone at several council meetings, silencing him and violating his constitutional rights. He alleges he wanted to speak about his stalker, Jensen, and the danger he faced. Dkt. 27 at 5, 16, 17, 19.

Defendants ask the Court to evaluate whether the muting was "a minor indignity, as 'de minimus deprivations and privileges on account of one speech do not give rise to a First Amendment claim.'" Dkt. 45 at 7 (quoting *Blair*, 608 F.3d at 544). Instead, Defendants assert that to state such a claim, a plaintiff must plausibly allege that the

conduct complained of "would stifle someone from speaking out." *Id*. Merz instead affirmatively alleges that he "refused to be silenced." Dkt. 27 at 28.

Even if muting a speaker at a city council meeting might in some circumstances amount to a First Amendment violation, Merz has not articulated the circumstances of his "muting," beyond his conclusory allegations about why his mic was muted.

In any event, he has not identified any authority suggesting that muting a council member's microphone for speaking about his personal challenges in the circumstances Merz describes violates the First Amendment. The Court is aware of none. The constitutional violation that Merz asserts in the factual context he describes is not "clearly established," as a matter of law. The defendants are entitled to qualified immunity from Merz's First amendment retaliation claim.

Defendants' motion for judgment on the pleadings on Merz's First Amendment retaliation claim is **GRANTED**, and that claim is **DISMISSED**. Because Merz has twice attempted to state a plausible claim, and he cannot do so consistent with the facts he has already pled, the dismissal is with prejudice and without leave to amend.

**2.      § 1983 "Stigma-Plus" Fourteenth Amendment Procedural Due Process Claim.**

To successfully plead a stigma-plus Procedural Due Process claim, a plaintiff must show: "(1) the public disclosure of a stigmatizing statement by the government; (2) the accuracy of which is contested; (3) *plus* the denial of some more tangible interest such as employment." *Chaudhry v. Aragón*, 68 F.4th 1161, 1170 (9th Cir. 2023).

Merz asserts that his future in public service and as a library patron was "effectively cut off" by defendants' "false charges" against him. Dkt. 48 at 7. It is not at all clear what false charges he references, who exactly made them, or when, or where, or how, or to whom, or how whatever a defendant said had the effect of depriving Merz of his ability to run for office or to use the Kalama public library in the future. Merz does not and could not allege that he was an employee of any defendant, or that he was terminated as the result of his protected activity.

Instead, he claims—again in the passive voice—that he was "stripped of his office at the request of the Defendants." Dkt. 48 at 7. This is a conclusion, not a factual assertion, and it is not plausible. Merz does not allege which defendant asked some unidentified person or entity to "strip him of his office," or how, when, or why that person or entity did so. Merz's complaint alleges only that "Defendants conspired to effectively oust Plaintiff from elected office[5] by discrediting him so badly that his seat was untenable." Dkt. 27 at 34. This too is conclusory, and it is not the sort of factual narrative that allows the *Court* to draw the reasonable inference that any unidentified defendant (much less all of them) is liable for the misconduct alleged. Merz's claim is not plausible.

Furthermore, if and to the extent this or any other claim is based on Chief Herrera's obtaining a state court ERPO against him, Merz is effectively asking this Court to undo that Order. This Court cannot and will not review or reverse decisions made in

---

[5] Merz may be alluding to the fact he lost the Mayoral election, but that is hardly akin to being "stripped of office."

state court. The *Rooker-Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "[W]hen a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden *de facto* appeal." *Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003); *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010).

If the information in the ERPO application was false[6] or improperly obtained, if application was in some other way improper, or if the ERPO was issued in error, the proper remedy is to point that out to the Court with jurisdiction over the Order, or to appeal the Order. The propriety of that Order cannot be re-litigated in this Court.

Even if the defendants violated Merz's constitutional due process rights by obtaining the ERPO Order or "stripping" him of his seat or his library privileges, Merz has not cited (and cannot cite) any authority clearly establishing a constitutional violation in a factual context remotely like the one described in his amended complaint. He asserts that *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1197 (D. Nev. 2009) stands for the proposition that an "allegation that official's defamatory statements effectively barred plaintiff from future public employment stated a stigma-plus claim." Dkt. 48 at 6.

---

[6] Merz's amended complaint alleges that the ERPO petition was "materially false," but does not identify what assertion was false, or who wrote it, or what the truth was. Dkt. 27 at 25. Merz's allegation is (again) entirely conclusory.

ORDER - 14

But *Mazzeo* did not say that. It said the *exact opposite*: "Mazzeo fails to state a stigma-plus claim under the Fourteenth Amendment. . . . Mazzeo's stigma-plus claim is dismissed." *Mazzeo*, 649 F.Supp.2d at 1197. Merz's characterization of this authority is again, at best, misleading.

The individual defendants are entitled to qualified immunity from Merz's "stigma plus" due process claim, as a matter of law.

Nor does Merz plausibly allege that any of the conduct he describes was caused by a Kalama policy[7] or custom. He has not identified nor articulated any such policy, or pled facts supporting the inference that it was the moving force behind some Kalama agent's violation of his constitutional due process rights. Merz's *Monell* claim against Kalama based on the ERPO is not plausible, as a matter of law.

For each of these reasons, defendants' motion for judgment on the pleadings on Merz's stigma-plus Fourteenth Amendment due process claim is **GRANTED**, and that claim is **DISMISSED**. Because Merz has already amended his complaint once, and he cannot state a plausible claim consistent with his detailed factual allegations, the dismissal is with prejudice and without leave to amend.

### 3. § 1983 Fourth and Fourteenth Amendment Seizure and Privacy claims.

Merz alleges that without a warrant, subpoena, or legal justification, Herrera "coerced or induced a third-party healthcare provider to disclose his protected health

---

[7] Merz's amended complaint asserts in its "Overview" that the individual conduct of which he generally complains was "often in *direct contravention of* City policy[.]" Dkt. 27 at 5 (emphasis added). This allegation cannot be squared with his later, inconsistent claims that the individual defendants acted *pursuant to* unwritten, unconstitutional City policies.

ORDER - 15

information (PHI)." Dkt. 27 at 36–37. He claims the defendants unconstitutionally seized and disseminated his PHI. *Id*.

Merz's factual allegations do not support such an inference; they preclude it. Merz's amended complaint alleges that he began seeing non-party therapist Conner Armand for anxiety, panic attacks, hypervigilance and other symptoms in March 2024. Dkt. 27 at 26. Merz alleges that, despite Armand's initial assessment of him as "low risk," on June 17, 2024, "Armand **voluntarily contacted** KPD under an alleged 'duty to warn.'" *Id*. (emphasis added). "Armand provided KPD with information about Plaintiff without obtaining consent and without Plaintiff making any threats that would justify an emergency disclosure under RCW 70.02.050." *Id*.

Merz assiduously avoids describing the details of what Armand reported to the police, or how Herrera used that information to obtain the ERPO. Instead, he simply states that the ERPO application was "false," that defendants "presented a skewed narrative," and the ERPO[8] was itself an "abuse of process." Dkt. 27 at 25. These are conclusions, not facts. Merz has pled no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." This is not enough to state a plausible claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

---

[8] Merz acknowledges he is (properly) appealing the state court's ERPO to the state court of appeals. Dkt. 27 at 25. This Court cannot interfere in that process.

ORDER - 16

Merz has not plausibly asserted facts allowing a Court to draw the reasonable inference that Herrera or any other defendant[9] unconstitutionally seized his PHI; he has instead affirmatively pled that non-party Armand voluntarily gave that information to the police, because Armand believed he had a state law duty to warn. Dkt. 27 at 26. Merz's Fourth Amendment seizure claim against Herrera based on Armand's voluntary report that Merz may be dangerous is not plausible, as a matter of law.

And, even if Herrera violated Merz's constitutional rights by acting on the information Armand provided, Merz has not argued or shown that any such violation was clearly established. Nor has he alleged, or even argued, that some unarticulated unconstitutional Kalama policy was the cause of—the moving force behind—any constitutional injury.

Defendants' motion for judgment on the pleadings on Merz's unconstitutional seizure claim is **GRANTED**, and that claim is **DISMISSED**. Because Merz cannot plausibly state a claim consistent with the facts he has already pled, the dismissal is with prejudice and without leave to amend.

### 4.   § 1983 Equal Protection claim.

Merz's amended complaint asserts as one claim an Equal Protection claim and a WLAD claim. The pleading alleges in conclusory fashion that Jenkins, Reuter and others "selectively treated [Merz] differently out of personal and irrational bias," and that he

---

[9] Merz's repeated objections about Armand's conduct are not relevant; Armand is not a party. *See* Dkt. 48 at 11–14. Notably, Merz does not assert that Armand was part of the broad conspiracy he alleges.

"was the only library donor/volunteer" who "got this kind of treatment," and the "only distinguishing factor was the library insiders' antipathy towards him (based on who he was and what he believed or was perceived to believe)." Dkt. 27 at 42. Merz alleges that defendants discriminated against him by rejecting his proffered donation of comic books to the library, by drafting a "formal complaint" about him, telling people there was "another side to him that people didn't know about," that he was "scary," and that Reuter told someone named Sara Hutchinson that he she "should be careful" around Merz. *Id.*; *see also* Dkt. 27 at 7.

To establish a claim under the Equal Protection Clause, a plaintiff must demonstrate that (1) he was treated differently from others similarly situated, and (2) the defendant acted with discriminatory intent. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Id.*

Defendants point out that Merz has not pled any facts supporting the notion that any defendant treated him differently than they treated any similarly situated individual, much less that any treatment was because Merz was a member of a protected class. Dkt. 45 at 12.

Merz responds that the defendants discriminated against him based on sex, race, and/or sexual orientation/gender expression, because (while also discriminating against him because he was a "homophobe") they perceived him as a "closeted gay man." Dkt 48 at 19. Merz contends, again in conclusory fashion, that defendants discriminated against him by "denying him a public opportunity"—presumably, the right to donate his comic

ORDER - 18

books. *See* Dkt. 27 at 41–42; Dkt. 48 at 19. He alleges the "intent was to discriminate against and defame Plaintiff so that he would not feel welcomed at the Kalama Public Library and be treated as a pariah by his community." Dkt. 27 at 41.

This claim is not plausible. Merz has not identified any similarly situated person that was treated any differently than was Merz. Instead, he alleges that "a female donor who championed feminist comics likely would not have been treated with suspicion." Dkt. 27 at 40. This is speculative.

In any event, Merz has not identified any authority even suggesting that declining a donation to a library as unsuitable for minors, because of the donor's political views, his homophobia, his gender expression, or his perceived sexual orientation, is an Equal Protection violation. The Court is aware of none. The constitutional violation that Merz asserts in the factual context he describes is not "clearly established." The defendants are entitled to qualified immunity from Merz's Equal Protection claim.

Accordingly, the defendants' motion to dismiss Merz's Equal Protection claim is **GRANTED**, and that claim is **DISMISSED**. Because he could not cure these flaws by pleading additional facts consistent with his twice-alleged, detailed factual narrative, the dismissal is with prejudice and without leave to amend again.

### 5.    § 1985 Civil Conspiracy claim.

Merz alleges that the defendants and others conspired to abuse their positions to "harm" him and to "cover it up." *Id.* at 49. These are conclusions, not facts. He asks the Court to infer from his allegations that the defendants and several non-party co-conspirators "tacitly or explicitly understood each other's aims and cooperated together."

ORDER - 19

*Id.* This is a conclusion, not a plausible factual narrative permitting the Court to infer that the conclusion is reasonable.

Merz's complaint essentially combines his complaints about various incidents and defendants into one sweeping conspiracy:

> Numerous overt acts were taken to further the conspiracy, as already enumerated: Jenkins publicly defaming Plaintiff; Herrera or Reuter deleting the death threat email; Herrera lying to deputies; Reuter muting Plaintiff and encouraging Jenkins & Herrera; Stanfill & Herrera usurping city council authority in creating an unlawful committee to sideline Plaintiff's input as a councilmember and citizen; Reuter, Stanfill & **Conradi** pushing background checks through the library mere months before Jenkins conducts and releases a background investigation into Plaintiff via the library; **Attorney Satterfield** publishing the sexually degrading images; Reuter, Herrera, and Stanfill coordinating to draft the "formal complaint" meant to chill Plaintiff's right to free speech; **Smee** staying silent on knowledge of Jensen; Herrera and Kalama PD obtaining Plaintiff's PHI without authorization and outside the bounds of legal process; Herrera misrepresenting Plaintiff's PHI in the ERPO petition to falsely depict him as dangerous; Reuter, Jenkins, and other city officials leveraging Herrera's ERPO filing to justify their own anti-harassment petitions, despite Plaintiff never having made threats or engaged in harassing conduct; Herrera and/or Kalama PD leaking information from the ERPO to the press, further amplifying the defamatory campaign; Reuter and Jenkins's earlier defamation campaigns creating the pretext for Herrera and Kalama PD to justify the ERPO; Reuter coordinating responses with Jenkins, Herrera, and other co-conspirators in City of Kalama to ensure Plaintiff was politically and socially exiled, including his constructive removal from the library and local civic affairs; Herrera filing ERPO; Herrera (**or another KPD staff member**) leaking to press; etc. Each of these acts furthered the shared goal of ruining Plaintiff's credibility or shielding Defendants from liability, thus integral to the conspiracy.

Dkt. 27 at 49–50 (¶5.65) (emphasis added to identify non-parties).

Based on these allegations, Merz asserts a civil conspiracy claim under 42 U.S.C. § 1985(2), which addresses conspiracies to obstruct justice by intimidating a litigant or

ORDER - 20

witness, to preclude him from attending or testifying in court, or punishing him for doing so. Merz alleges that this case was pending[10] when Herrera sought an ERPO, and that

> The filing of the ERPO on June 27, 2024, based on unlawfully accessed PHI, and the subsequent leak of the ERPO and filing of additional anti-harassment protection orders by Defendants, constitutes retaliation for Plaintiff's exercise of his First Amendment right to petition the court for redress. The timing strongly implies that Herrera, Kalama PD, Reuter, Jenkins, Stanfill, City of Kalama, and their co-conspirators conspired to injure Plaintiff via the ERPO and smear campaign in retaliation for this lawsuit, making them liable under 42 U.S.C. §1985(2).

Dkt. 27 at 51.

Defendants argue that Merz has not plausibly pled that the alleged conspirators "entered into an agreement to accomplish the object of the conspiracy." Dkt. 45 at 14 (citing *Young v. Rayan*, 27 Wn. App. 2d 500, 518 (2023)).

Merz responds that he did allege the defendants and others agreed to punish him and repeats his allegations that they "formed a conspiracy" and that they "acted in concert to further the common unlawful plan." Dkt. 48 at 25.

These are legal conclusions. They are not factual allegations allowing the Court to draw the reasonable inference that the defendants are liable for the misconduct alleged. Merz has pled no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." This is not enough to state a plausible claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

None of Merz's individual claims are plausible, and his attempt assert a claim combining them into a sweeping conspiracy aimed at punishing him for this lawsuit is not

---

[10] Merz filed this case in state court in May 2024. Dkt. 1-2.

plausible as a matter of law. Defendants' motion for judgment on the pleadings on Merz's § 1985(2) civil conspiracy claim is **GRANTED**, and that claim is **DISMISSED** with prejudice.

**C.      Merz's state law claims.**

      **1.      Washington Privacy Act claim (RCW 70.02)**

Merz alleges that defendants violated his state law privacy right in his medical records in connection with the PHI used to support the ERPO, discussed above. He alleges that "Herrera and Kalama PD further violated RCW 70.02.020(1) and Plaintiff's common law right to privacy by disseminating Plaintiff's PHI to multiple third parties, including at least thirteen (13) individuals and Longview's *The Daily News* newspaper." Dkt. 27 at 38.

Merz (accurately) asserts that "RCW 70.02.020(1) prohibits *health care providers* from disclosing PHI without valid patient authorization, a valid court order, or a statutory exception." *Id.* (emphasis added). None of the defendants are health care providers, and the health care provider who (Merz alleges) "voluntarily" disclosed his health care information (Merz pleads "under an alleged duty to warn"),[11] Armand, is not a party.

This claim is not plausible because the statutory prohibition facially does not apply to any defendant. For this reason, and for the reasons discussed in connection with Merz's unconstitutional seizure claim, above, defendants' motion to dismiss this claim is

---

[11] Defendants correctly point out that RCW 70.02.050(c) permits a health care provider to disclose information without a patient's consent "to any person if the health care person … believes, in good faith, that [] disclosure is necessary to prevent or lessen a serious and imminent threat to the health or safety of a person or the public." Dkt. 45 at 9.

**GRANTED**, and Merz's RCW 70.02 medical privacy claim is **DISMISSED**. Because Merz cannot remedy the flaws in this claim through further amendment, the dismissal is with prejudice and without leave to amend.

### 2.  WLAD claim.

Merz asserts a Washington Law against Discrimination (WLAD) claim, alleging the defendants unlawfully discriminated against him "on the basis of advocating views that were not politically aligned with their own beliefs." Dkt. 27 at 40. WLAD prohibits discrimination based on "protected status" including race, "creed" (religion), color, or sex. RCW 49.60.030.

Merz has alleged only that some defendants disagreed with him about the suitability of reading material for minors. He has not plausibly pled that he is a member of a protected class or that defendants discriminated against him based on that status. His WLAD claim fails as a matter of law. Defendants' motion to dismiss this claim is **GRANTED** and it is **DISMISSED** with prejudice. Because Merz cannot plead additional facts consistent with those he has twice pled in support of this claim, the dismissal is with prejudice and without leave to further amend.

### 3.  Defamation claim.

Merz asserts a state common law defamation claim against Jenkins, Reuter, Herrera, and Kalama, based on Jenkins' "claiming or strongly implying" that Merz is "racist, sexist, homophobic, transphobic, and a child predator." Dkt. 27 at 43. He also alleges Herrera defamed him when he used the PHI (provided by non-party therapist Armand) in applying for the ERPO. *Id*. He does not allege what Herrera said in that

application, or why it was false. He does not quote the words he alleges "strongly implied" anything.

A defamation claim has four essential elements: (1) a false communication (2) that was unprivileged, (3) for which the defendant is at fault, and (4) that caused the plaintiff damages. *Young v. Rayan*, 27 Wn. App. 2d 500, 515 (2023).

Defendants argue, persuasively, that a defamation claim based on allegedly false statements in an ERPO order requires the pleader to allege what was said, and why it was false. It is not, and cannot be, plausible to simply state in purely conclusory fashion that some undescribed statement was "defamatory." A plaintiff must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). And, as the Court explained above, the appropriate venue for disputing the veracity of an ERPO application is in the Court in which that application was pending. Merz cannot re-litigate that Order here.

Merz's other claims are conclusory and implausible. He alleges that Jenkins (with Reuter's encouragement) "prepared a report" "accusing" Merz of being "racist, sexist, homophobic transphobic, a child predator, and not an appropriate person to volunteer with children." Dkt. 48 at 20 (citing Dkt. 27). He does not identify or purport to actually quote any part of the report, and his characterization of its contents is conclusory.

Merz's amended complaint, despite its length, alleges only that defendants "labeled" or "branded" him as such. Dkt. 27 at 40. It does not allege the "who what when where why or how" of the defendants' "labelling," or even allege that they communicated the unquoted assertions or their "report" to anyone. Merz does not even identify or quote

the report or allege that it was disseminated. Merz argues[12] that "accusations of criminal behavior (like being a "predator") are defamation per se, which means damages are presumed without specific proof." Dkt. 48 at 21 (citing *Caruso v. Local Union 690*, 107 Wn.2d 524, 529-30 (1987)). But he does not plausibly articulate any such accusation.

Defendants' motion to dismiss Merz's defamation claim is **GRANTED**, because it is not plausible as a matter of law. Merz's defamation claim is **DISMSISSED**. Because he cannot remedy these flaws, the dismissal is with prejudice and without leave to amend.

### 4.    Negligence claim.

Merz alleges that the Kalama police owed him a duty to keep him informed about the whereabouts and stated intentions of his stalker, Jensen. He alleges that even though Herrera knew of threats Jensen made about Merz, and of Jensen's presence in Kalama, the police did not warn him. Dkt . 48 at 22. He contends that Jensen sent him an "email death threat" that Merz "did not see before it was deleted." *Id.*

Merz references this email in support of several claims. The Court can surmise that Jensen sent it, but Merz's allegation that he never saw it is belied by his claim that it "contained a manifesto purporting to expose" him. *See* Dkt. 27 at 14. And he does not allege who deleted it, or why. Instead, he vaguely suggests that "Herrera and Reuter

---

[12] Merz's articulation of the law is reasonably accurate. *See Life Designs Ranch v. Sommer*, 191 Wash.App. 320, 329 (2015). But his citation to *Caruso v. Local Union 690*, 107 Wn.2d 524, 529-30 (1987) is again misleading. Dkt. 48 at 21. The cited *Caruso* pages dealt with the burden of proof on falsity. The words "per se," "presumed," and "specific proof" do not appear on those pages, or anywhere else in the opinion.

likely conferred—as Herrera did with [] Smee—then deleted the death threat." Dkt . 48 at 22. He does not suggest how when or why someone accessed his email account.

The public duty doctrine generally precludes negligence claims against police or other governmental entities based on an alleged breach of a broad duty owed to the public as a whole, rather than a particular duty owed to the plaintiff under the circumstances. *See Norg*, 200 Wn.2d at 757–759.

Merz asserts a "breach of special duty" negligence claim against Herrera and Kalama. Dkt. 27 at 46–48. He alleges that Herrera and Kalama established a special relationship with him and thus "owed him a duty to warn or protect him, by virtue of:"

> (a) Plaintiff being an identifiable, targeted victim of a known threat (Jensen's death threats) of which Defendants were aware; and
> (b) Defendants affirmatively undertaking investigative/control actions in regard to that threat.

Dkt. 27 at 46–47.

Defendants correctly contend that to plausibly plead that the "special relationship" exception to the public duty doctrine applies, a plaintiff must show:

> (1) some form of privity or direct contact between the government agency and plaintiff that sets the plaintiff apart from the general public;
> (2) the agency gave the plaintiff specific assurances that resulted in the agency undertaking a duty; and
> (3) the plaintiff justifiably relied upon those assurances.

*Stansfield v. Douglas Cnty.,* 107 Wn. App. 1, 13 (2001).

Merz has not met, and cannot meet, this standard. The suggestion that two people "likely" deleted an undescribed death threat email is speculative and is not the sort of factual allegation required to state a plausible claim. Nor does Merz

ORDER - 26

articulate what the death threat email said, or how he would have been in a better position if he saw it.

Merz does not allege that anyone gave him specific assurances about anything. He essentially claims he "justifiably relied" by not hiring security or taking other precautions. But Merz does not allege that he was harmed by, or even ever saw, Jensen.

In addition to duty and breach, any negligence claim requires the plaintiff to plausibly plead both damages and causation. Merz has done neither.

Defendants' motion for judgment on the pleadings is **GRANTED**, and this claim is **DISMISSED** with prejudice and without leave to amend.

**5.    Outrage claim.**

Merz asserts an outrage claim against all defendants, asserting that their "collective and individual conduct, as described in painful detail above, was extreme and outrageous to an extent that it goes beyond all bounds of decency and is utterly intolerable in a civilized society." Dkt. 27 at 52. Like his federal § 1985 civil conspiracy claim, this state law claim seeks to combine all Merz's various grievances into a single, catch-all claim.

To state a claim for the tort of outrage, a plaintiff must show: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Cole v. Amazon.com Services, LLC*, 765 F.Supp.3d 1154, 1161 (W.D. Wash. 2025) (citing *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 242, 35 P.3d 1158 (2001)).

Outrageous conduct is conduct which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim "Outrageous!" *Cole* at 1162 (citing *Reid v. Pierce County,* 136 Wn.2d 195, 201–02, 961 P.2d 333 (1998)). "This is a high bar, and the Washington courts are not easily outraged." *Id*. (citing *Jermy v. Jones*, No. 99-35044, 2000 WL 1685031, at *2 (9th Cir. Nov. 9, 2000)).

Even "highly offensive and intolerable" conduct is not "outrageous" under Washington law. Instead, since its introduction in 1975, the tort of outrage has been reserved for conduct that is "extreme," "atrocious," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community." *Id.* (citing *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)).

Merz has not alleged any facts supporting the conclusion that any defendant's conduct meets this high standard, and he cannot, as a matter of law.

Defendants' motion for judgment on the pleadings on Merz's outrage claim is **GRANTED** and that claim is **DISMISSED** without prejudice and without leave to amend.

\*\*\*

Defendants' Rule 12(c) motion for judgment on the pleadings, Dkt. 45, is **GRANTED**. All of plaintiff Merz's claims against all defendants are **DISMISSED** with prejudice and without leave to further amend. The clerk shall enter a **JUDGMENT** and close the case.

**IT IS SO ORDERED**.

Dated this 13th day of February, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 29